IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FREDERICK SCOTT DATTEL,<br>[DOB: 9/26/1965]<br><br>Defendant. | Case No. 22-00255-01-CR-W-BCW<br><br>**COUNT ONE:**<br>False Statement Relating to Health Care<br>18 U.S.C §§ 1035(a) and 2<br>NMT Five Years Imprisonment<br>NMT $250,000 Fine<br>NMT Three Years Supervised Release<br>Restitution may be ordered<br>Class D Felony<br><br>$100 Mandatory Special Assessment |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### Background Information

1. At times relevant to this Information, Frederick Scott DATTEL, the defendant, was a licensed medical doctor with a specialty in pediatrics and was licensed in 19 states, including, Missouri and Kansas. DATTEL owned and operated his own medical practice, Kansas City Pediatrics, L.L.C. in Kansas City, Missouri.

2. At times relevant to this Information, the defendant was employed by, or contracted with, companies that provided health care related services as well as companies that submitted reimbursement claims to health care benefit programs, including Medicare, for services DATTEL purportedly provided.

### The Medicare Program

3. The Medicare Program ("Medicare") is a federal health care program providing benefits to individuals who were the age of 65, or older, or disabled. The benefits available under Medicare are governed by federal statutes and regulations. Individuals who received benefits

under Medicare are commonly referred to as Medicare "beneficiaries." The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversees and administers Medicare.

4. Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

5. Medicare Part B covers, among other things, medical services provided by physicians, medical clinics, laboratories, and other qualified health care providers, as well as office services and outpatient care—including the ordering of durable medical equipment, prosthetics, orthotics, and supplies (DME)—that are medically necessary and ordered by licensed medical doctors or other qualified health care providers.

6. Physicians, clinics and other health care providers, including laboratories, that provide services to Medicare beneficiaries must apply for and obtain a "provider number." A health care provider that receives a Medicare provider number is able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

7. To receive Medicare reimbursement, providers must apply to a Medicare Administrative Contractor and execute a written provider agreement. The Medicare provider enrollment application must be signed by an authorized representative of the provider. The application contains certifications that the provider agree to abide by the Medicare laws and regulations, including the Anti-Kickback Statute, as well as agrees that the provider "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

2

8. In December 2016, DATTEL submitted an online application to enroll as a Medicare provider. Of the application's enrollment options, DATTEL chose the option (Form CMS-855O) allowing him to only refer Medicare members to other Medicare providers—such as pharmacies, laboratories, and suppliers of durable medical equipment—that bill Medicare for items or services he deemed medically necessary.

### Telemedicine

9. In addition to his pediatrics practice, DATTEL has practiced telemedicine. The term telemedicine is generally associated with the use of telecommunications technology to provide health care services remotely. Telemedicine involves commercial platforms, such as RediDoc L.L.C. (RediDoc), that contract with medical providers like DATTEL who use various technological means (i.e., telephone, real-time audio-visual cyber-connectivity, text message) to remotely consult with and treat patients.

10. Missouri law requires that physicians who use telemedicine shall ensure that a properly established physician-patient relationship exists with the person who receives the telemedicine services. Without additional consultation, a questionnaire completed by the patient—whether via the internet or telephone—does not constitute an acceptable medical interview and examination for treatment by telehealth.

11. Medicare Part B covers expenses for specified telehealth services if certain requirements are met. These requirements included that (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via an interactive audio and video telecommunications system; and (c) the beneficiary was at a practitioner's office or a specified medical facility—not at a beneficiary's home—during the telehealth consultation with a remote practitioner.

### Durable Medical Equipment (DME)

12. Medicare covers a beneficiary's access to DME, such as off-the-shelf (OTS) ankle braces, knee braces, back braces, elbow braces, wrist braces and hand braces. OTS braces require minimal self-adjustment for appropriate use.

13. A claim for DME submitted to Medicare qualifies for reimbursement only if it is medically necessary for the treatment of the beneficiary's illness or injury and is prescribed by a licensed physician.

### Compounds

14. According to the Food and Drug Administration, "[c]ompounding is generally a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient." A compound may be necessary when a patient has a medical condition, such as an allergy, that makes "commercially available drug[s]" unsafe to him or her. Compounds frequently take the form of topical creams and gels.

15. Medicare Part D covers compounds. Like any other "covered part D drug," however, a compound "may be dispensed only upon a prescription...." 42 U.SC. 1395w-102(e)(1)(A).

### False and Fraudulent Actions Related to RediDoc, L.L.C.

16. RediDoc, is a commercial telemedicine platform. As shown below, RediDoc's owners unlawfully profited by paying kickbacks and bribes to doctors so doctors would sign high volumes of expensive beneficiary prescriptions and DME orders that were not medically necessary.

17. Marketers identified Medicare beneficiaries to target for expensive medications and DME. After identifying beneficiaries, the marketers called the beneficiaries to persuade them to agree to try the medications or DME—even when the beneficiary's need for those items was not clear and was not discussed with the beneficiary's doctor.

18. The marketers then transmitted to RediDoc the beneficiaries' medical information and the proposed prescriptions or doctor's DME orders that included pre-marked check-off boxes for particular drugs or DME that would yield large reimbursements. The marketers in turn paid reimbursement proceeds to RediDoc and its owners.

19. These orders were then filled by DME providers and pharmacies around the country who received lucrative reimbursements from Federal health care benefit programs including Medicare. In many circumstances, upon receipt of reimbursement, the DME providers and pharmacies then returned a portion of the health insurance reimbursements as kickbacks to the telemedicine companies, who, in turn, paid the doctors who had prescribed or ordered the unnecessary DME and compounds. Specifically, RediDoc—as mentioned above—ensured doctors would sign a high volume of expensive beneficiary prescriptions and DME orders by paying the doctors bribes and kickbacks.

## False and Fraudulent Actions Related to DATTEL

20. Beginning on or about December 1, 2016 (date of Medicare application submission), Frederick Scott DATTEL, as a Medicare provider, promised to comply with all Medicare rules and regulations and federal laws, including that he would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that he would comply with the Anti-Kickback Statute.

21. Between August 2017 and February 2018, DATTEL worked as a physician for RediDoc. During this time, DATTEL unlawfully caused to be submitted false and fraudulent claims to health care benefit programs, including Medicare, for prescriptions for DME and compounds without examining or speaking to patients and without any physician-patient relationship. While working for RediDoc telemedicine, many of these completed, signed prescriptions for DME and compounds and other Medicare-required documents, referred to as "doctors' orders", as DATTEL knew, were, among other things, not legitimately prescribed, not needed, and not used.

22. During 2017 and 2018, while practicing telemedicine for RediDoc, DATTEL reviewed 1077 patient files. DATTEL engaged in these consultations from his office at Kansas City Pediatrics and elsewhere.

23. Of the 1077 patient files reviewed, DATTEL issued orders or prescriptions for 1075 beneficiaries for DME, orthotics, and/or compounds. DATTEL issued the orders and prescriptions (a) without seeing, speaking to, or otherwise communicating or examining the beneficiaries and (b) without regard to whether the beneficiaries actually needed the DME and compounds. These orders and prescriptions, as DATTEL knew, were used to submit false and fraudulent claims to Medicare.

24. DATTEL was not treating and did not examine the RediDoc beneficiaries for whom he signed the doctors' orders. Despite this, DATTEL certified that he had assessed the beneficiaries and verified the medical necessity of the doctors' orders. Without such statements of medical necessity, Medicare does not reimburse claims for these orders.

25. Many of the RediDoc beneficiaries for whom DATTEL signed doctors' orders were targeted by telemarketing campaigns. These beneficiaries received DME and compounds regardless of medical necessity.

26. As a result of these orders, between on or about August 28, 2017, and February 26, 2018, Medicare was billed at least $312,392.54 for DME and compounds and paid at least $211,542 for these orders.

27. During the same timeframe, RediDoc deposited a total of $22,270 over thirteen separate payments. These payments were deposited into three bank accounts that DATTEL controlled.

### November 7, 2017 – Part B Beneficiary Claims Denied

28. On multiple dates on or between August 28, 2017, and February 26, 2018, DATTEL engaged in "sprints" of RediDoc patient files where he opened and signed numerous orders only seconds after having viewed them.

29. On November 7, 2017, RediDoc Physician Support asked DATTEL to review "29 CMS Patients under the state of Michigan." DATTEL agreed to the review, and he issued an order for orthotics for each file he reviewed. HHS-OIG estimates that these orders resulted in a total of approximately $28,614.28 in reimbursements that Medicare Part B paid to various suppliers.

30. DATTEL had no pre-existing doctor-patient relationship with any of the RediDoc "29 CMS Patients under the state of Michigan."

31. Among the DME orders that DATTEL signed, for Michigan Part B beneficiaries on November 7, 2017, Part B declined to reimburse a claim that was deemed "medically unnecessary" for Medicare beneficiary G. M. DATTEL signed an electronic order for DME for G.M. after viewing the electronic patient file for only 26 seconds.

## COUNT ONE
## False Statements Relating to Health Care Matters
### (Violation of 18 U.S.C. §§ 1035 and 2)

32. On or about November 7, 2017, in the Western District of Missouri and elsewhere, Frederick Scott DATTEL, in a matter involving a health care benefit program, specifically Medicare, did knowingly and willfully (a) falsify, conceal, and cover up by trick, scheme, and device material facts, and (b) make materially false, fictitious, and fraudulent statements and representations, and make or use materially false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services.

33. Specifically, on November 7, 2017, DATTEL reviewed an electronic patient file for Medicare beneficiary G.M. and signed an electronic order for a back brace for G.M. DATTEL certified that he was treating G.M. and that he personally performed the assessment of the patient for the prescribed treatment and device. DATTEL verified in an Order For Orthosis that the brace was "medically necessary with reference to the standards of medical practice for this patient's condition(s)."

34. In fact, DATTEL was not treating G.M., had performed no assessment nor diagnosis of G.M., and he falsely stated that he determined—through his interaction with G.M.—that the prescription of an orthotic back brace was medically necessary.

All in violation of Title 18, United States Code, Sections 1035(a) and 2.

Teresa A. Moore
United States Attorney

Brent Venneman
Assistant United States Attorney

Dated: 11/10/2022
Kansas City, Missouri